UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERYL R. NOACK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-CV-01085-SPM |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Kilolo Kijakazi, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Cheryl R. Noack ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 8). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

In January 2017, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title XVI of the Act, and in February 2017, she applied for SSI under Title II of the Act. (Tr. 306-13). She alleged that she became disabled on November 1, 2010, due to depression, anxiety, bipolar, diabetes, high blood pressure, asthma, mood swings, pneumonia, and emphysema. (Tr. 306, 362). On September 29, 2018, Plaintiff amended her alleged disability onset date to January 31, 2017. (Tr. 321). Her claims were denied. (Tr. 217-24). Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (Tr. 228). On March 14, 2019, the ALJ held a hearing on Plaintiff's claims. (Tr. 169-94). On May 23, 2019, the ALJ issued an unfavorable decision. (Tr. 14-37). On July 17, 2019, Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 293-95). On June 15, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

Plaintiff acknowledges in her brief that she is not eligible for DIB in light of the fact that her date last insured was December 31, 2004, and her amended alleged disability onset date is January 31, 2017. *See* Pl.'s Br., at 3. She seeks judicial review only of Defendant's determination that she is not entitled to SSI.

## II. FACTUAL BACKGROUND

On March 14, 2019, Plaintiff testified as follows at the hearing before the ALJ. (Tr. 171-89). Plaintiff lives with her two disabled adult sons; they help take care of her. (Tr. 175). Her last job was in 2011, at Six Flags; she had to quit, because she could not tolerate the hills due to shortness of breath and because she kept getting really bad anxiety. (Tr. 176-77). Plaintiff cannot work because of pain in her neck, shoulders, back, and legs; numbness in her fingers and toes; and

2

carpal tunnel that is more severe in her right hand than her left. (Tr. 178). The pain in her neck is constant, and some days she cannot even get dressed. (Tr. 178). She has spinal stenosis in the middle of her back that "shoots at the bottom" and that and now goes down her legs. (Tr. 179). Sometimes she cannot keep her balance. (Tr. 180). Plaintiff tries to do the dishes, but she gets bad pain in her lower back and legs after five or ten minutes. (Tr. 181). She does not fold clothes anymore because of pain in her hand and wrists. (Tr. 181-82). Plaintiff's medications, especially, Xanax and Flexeril, knock her out, and she sleeps a lot. (Tr. 182). For the past six months, she has been hearing voices—a baby crying—and sometimes seeing ghosts. (Tr. 183). Plaintiff forgets things a lot and has burned her food several times; she also forgets doctor's appointments. (Tr. 184). It is hard for her to lift a gallon of milk, and doing so will make her arm and wrist hurt for the rest of the day. (Tr. 185). Due to her neck, shoulder, and arm issues, she cannot lift her arms, and some days it's hard for her to hold her head up. (Tr. 185). She can usually stand for ten to fifteen minutes before she has to sit down because of the pain in her lower back and legs. (Tr. 186). She can sit for 20 to 30 minutes and then has to get up. (Tr. 187). She cannot walk through Walmart, because she gets out of breath so easily; sometimes she gets out of breath even walking from her kitchen to her bedroom. (Tr. 187). Plaintiff has no social life; she cries a lot; she has problems completing tasks; and she has mood swings. (Tr. 188-89). She does think her medications are helping "somewhat." (Tr. 189).

With regard to the medical and vocational records, the Court generally accepts the facts as set forth in the parties' respective statements of fact and responses. In the discussion below, the Court will cite to specific portions of the record as necessary to address the parties' arguments. Briefly, the record shows that during the relevant period, Plaintiff sought and received treatment for conditions including emphysema, chronic obstructive pulmonary disease ("COPD"), major

depressive disorder, generalized anxiety disorder, posttraumatic stress disorder, shoulder pain, neck pain, hand numbness, cervical degenerative disk disease, and carpal tunnel syndrome. The record contains several opinions regarding Plaintiff's functional limitations: the April 2017 opinion of state agency medical consultant, Renu Debroy, M.D., who reviewed Plaintiff's records and opined that Plaintiff was able to perform light work in well-ventilated areas, while avoiding concentrated exposure to humidity and even moderate exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 209-10); the October 2018 opinion of Plaintiff's treating physician, Anjani Urban, M.D., who indicated that Plaintiff had physical and mental limitations more severe than those reflected in the RFC (Tr. 853-56); the April 2017 opinion of state agency psychological consultant Linda Skolnick, Psy.D., who indicated that Plaintiff had moderate limitations in some areas but could understand, remember, and concentrate and persist on simple to possibly moderately complex tasks, could interact socially in a setting that did not require frequent contact with supervisors, and could adapt to most normal changes in a work setting. (Tr. 211-12); and the March 2019 opinion of Plaintiff's treating nurse practitioner, Ivy Alwell, APRN, who indicated that Plaintiff had mental limitations more severe than those reflected in the RFC (Tr. 961-64).

### III.  STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment

must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 416.920(a)(4), which is "the most [a claimant] can do despite [his or her] limitations," 20 C.F.R. § 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.960(c)(2).

### IV.  THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since November 1, 2010, the original alleged onset date; that Plaintiff had the severe impairments of chronic obstructive pulmonary disease ("COPD"), tobacco abuse, mild bilateral carpal tunnel syndrome, cervical degenerative disc disease,

6

depression, and anxiety; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20-21). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally climb ladders, ropes, or scaffolds and can frequently handle and finger with the bilateral upper extremities. [Plaintiff] should avoid humidity and can have occasional exposure to concentrated dusts, fumes, gases, odors, and poor ventilation. [Plaintiff] is able to perform simple, routine tasks with minimal changes in job duties and setting. [Plaintiff] is able to occasionally interact with supervisors.

(Tr. 22-23). At Step Four, the ALJ found that Plaintiff had no past relevant work. (Tr. 29). However, at Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 29). The ALJ identified three representative occupations: product assembler; inspector, packer; and housekeeping cleaner. (Tr. 30). Thus, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, from November 1, 2010, through the date of the decision. (Tr. 30).

### V. DISCUSSION

#### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

7

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Assessment of the Medical Opinion Evidence

Plaintiff challenges the ALJ's decision on one ground: that the ALJ did not properly evaluate the opinion evidence. In particular, Plaintiff argues that the ALJ did not properly analyze the opinion of Plaintiff's treating primary care physician, Dr. Urban, and that the ALJ gave too much weight to the opinion of Dr. Debroy, a medical consultant employed by Defendant. Plaintiff also argues that "the evidence as a whole supports a finding that she is limited to no more than sedentary work secondary to chronic obstructive pulmonary disease (COPD), bilateral carpal

tunnel syndrome, cervical degenerative disk disease, depression and anxiety." Pl.'s Br. , at 4. She points out that if Plaintiff had been limited to sedentary work, she would have met the requirements under the medical-vocational guidelines (the GRIDS) to be considered disabled.

The Court first considers the ALJ's analysis of Dr. Urban's opinion. On October 16, 2018, Dr. Urban completed a Physical RFC Questionnaire. (Tr. 853-56). Dr. Urban noted that she had seen Plaintiff at least every six to twelve months, sometimes more frequently for acute issues; that Plaintiff's diagnoses were neck pain, hypertension, diabetes mellitus II, COPD, chronic hepatitis C, and mood disorder; that her symptoms were neck pain, shortness of breath, hand numbness, and anxiety; and that her prognosis was fair to poor. (Tr. 853). Dr. Urban noted that Plaintiff had neck pain with subsequent right upper extremity numbness and some weakness that "began on 10/16/17 after a fall." (Tr. 853). Asked to identify the clinical findings and objective signs that formed the basis for her opinions, Dr. Urban noted several specific X-ray and MRI findings, as well as a nerve conduction study showing lower cervical radiculopathy and bilateral carpal tunnel. (Tr. 853). Dr. Urban noted that Plaintiff's Gabapentin caused drowsiness, dizziness, and nausea, and Plaintiff had not responded well to it, and that surgery had been recommended for her carpal tunnel syndrome. (Tr. 853). Dr. Urban indicated that anxiety affected Plaintiff's physical condition. (Tr. 854). Dr. Urban stated that Plaintiff would "constantly" experience pain or other symptoms severe enough to interfere with attention and concentration needed for simple work tasks; that Plaintiff could walk only one to two city blocks without rest or severe pain; that Plaintiff could sit for one hour at a time without getting up; that Plaintiff could stand for 30 minutes at one time; that Plaintiff could stand/walk less than two hours total in an eight-hour work day; that Plaintiff could sit for about two hours total in eight-hour workday; and that Plaintiff would need periods of walking around for one to five minutes, every 20-30 minutes, during an eight-hour work day; and that

9

Plaintiff needs the ability to shift positions at will from sitting, standing, or walking. (Tr. 854). Dr. Urban opined that Plaintiff would need to take unscheduled breaks of 5-10 minutes every 30 minutes to an hour. (Tr. 855). Dr. Urban indicated that Plaintiff does not use a cane or other assistive device when standing walking. (Tr. 855). She opined that Plaintiff could lift less than 10 pounds occasionally, 10 pounds rarely, and never 20 pounds or more; that she can occasionally hold her head in a static position and rarely look up, look down, or turn her head right or left; that she could spend 0% of an eight-hour day using her arms for reaching, 10% of an eight-hour day using her fingers for fine manipulations, and 10% of an eight-hour day using her hands to grasp, turn, or twist objects. (Tr. 855). She opined that Plaintiff would likely be absent from work more than four days per month due to her impairments or treatment. (Tr. 855). Dr. Urban also opined that Plaintiff's neck pain and carpal tunnel would limit her general ability to move around and manipulate things with her hands, and that she would also have frequent headaches. (Tr. 856).

Under the regulations applicable to Plaintiff's claim, Dr. Urban is considered a "treating source" whose opinion must be evaluated pursuant to 20 C.F.R. § 416.927(c)(2).[2] If the Commissioner finds that a treating source's medical opinion on the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Social Security Administration will give that opinion "controlling weight." *Id.* When the ALJ does not give a treating physician's opinion controlling weight, the ALJ must evaluate the opinion based on several factors, including the length of the treatment relationship

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed after March 27, 2017, the special rules governing treating sources have been eliminated. *See* 20 C.F.R. § 416.920c(a). Because Plaintiff's claims were filed in January 2017, the Court will apply the version of the regulations that applies to claims filed before March 27, 2017.

10

and the frequency of examination, the nature and extent of the treatment relationship, the evidence provided by the source in support of the opinion, the consistency of the opinion with the record as a whole, and the level of specialization of the source. 20 C.F.R. § 416.927(c)(2)-(6). The ALJ may discount a treating physician's opinion where, for example, "other medical assessments are supported by better or more thorough medical evidence," *Goff*, 421 F.3d at 790 (internal quotation marks omitted), or the opinion "is inconsistent with the physician's clinical treatment notes," *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009). "When an ALJ discounts a treating physician's opinion, [the ALJ] should give good reasons for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (internal quotation marks omitted). *See also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

In the decision, the ALJ summarized Dr. Urban's opinion and gave it "little weight." (Tr. 27). After careful review of the record as a whole, and keeping in mind that the Court's role is limited and the Court may not substitute its judgment for that of the ALJ, the Court concludes that the ALJ gave good reasons, supported by substantial evidence, for his decision to give little weight to Dr. Urban's opinion.

First, the ALJ considered that Dr. Urban provided "very little explanation" for many of her opinions, noting, for example, that "Dr. Urban did not identify an impairment that would cause the claimant's alleged back and leg pain." (Tr. 17). Dr. Urban did cite several cervical radiographic findings and a nerve conduction study showing carpal tunnel syndrome in her opinion, but none of that evidence has an obvious relationship to the restrictions Dr. Urban placed on Plaintiff's ability to sit, stand, and walk, and Dr. Urban did not provide an explanation for such a relationship.

11

Second, the ALJ reasonably found the extreme limitations in Dr. Urban's opinions inconsistent with other medical evidence. (Tr. 27). For example, the ALJ found Dr. Urban's limitations on sitting, standing, and walking "inconsistent with the medical evidence that does not show any abnormalities of the lower back or lower extremities"—a reasonable finding in light of Dr. Urban's records and the other medical records, which show primarily problems with Plaintiff's upper body. The ALJ also reasonably found Dr. Urban's extreme limitations in handling and fingering "not consistent with the mild carpal tunnel syndrome and intact flexion and extension of the fingers documented by the specialist"; this finding by the ALJ has support in the medical treatment notes of specialist Dr. Donald Pruitt. (Tr. 27, 888, 892).

Third, the ALJ identified internal inconsistencies in Dr. Urban's opinion, noting that Dr. Urban opined that Plaintiff could sit for an hour at a time but also opined that Plaintiff would need to get up and walk after 20 to 30 minutes. (Tr. 27). Although this was a fairly minor discrepancy, it was reasonable for the ALJ to consider it along with the rest of the record in weighing Dr. Urban's opinion.

In sum, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for discounting the opinion of Dr. Urban. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir.2012) (holding the ALJ did not err in giving minimal weight to the report of a treating physician where the opinion was conclusory and contained significant limitations not reflected in his treatment notes); *Hogan v. Apfel,* 239 F.3d 958, 961 (8th Cir.2001) (affirming the ALJ's decision to discount the opinion of a treating physician where it contained limitations that "stand alone" and "were never mentioned in [the physician's] numerous records of treatment . . . nor were they supported by any objective testing or reasoning which would indicate why the claimant's functioning need be so restricted"); *Guilliams v. Barnhart,* 393 F.3d 798, 803 (8th Cir. 2005) ("Physician opinions

that are internally inconsistent . . . are entitled to less deference than they would receive in the absence of inconsistencies."); 20 C.F.R. § 416.927 ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The Court next turns to the ALJ's evaluation of Dr. Debroy. On April 19, 2017, Dr. Debroy reviewed the record and opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; could sit (with normal breaks) for a total of about six hours in an eight-hour workday; had unlimited ability to push and/or pull; would need to avoid concentrated exposure to humidity; would need to avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and was "capable of performing light tasks in well-ventilated areas." (Tr. 209-10).

The ALJ gave "significant weight" to Dr. Debroy's opinion. The ALJ noted that Dr. Debroy had considered Plaintiff's respiratory impairments and found the reduction to light work and environmental restrictions appropriate to account for Plaintiff's alleged shortness of breath, considering the objective respiratory findings in the record. (Tr. 28). However, the ALJ also recognized that Dr. Debroy had not been able to consider all of the evidence. The ALJ fond that the new evidence presented after Dr. Debroy's opinion, which showed neck pain, disc disease, stenosis, and mild carpal tunnel syndrome, warranted the inclusion of additional restrictions on climbing, handling, and fingering. (Tr. 28).

Plaintiff argues that the ALJ should not have relied on Dr. Debroy's opinion because it predates the ALJ's decision by two years and predates much of the evidence related to Plaintiff's

13

neck and arm problems. Had the ALJ relied solely on Dr. Debroy's opinion in formulating the RFC, Plaintiff's arguments might be persuasive. But the ALJ did not—instead, she expressly acknowledged that Dr. Debroy had not had the opportunity to review all of the evidence and included additional limitations in the RFC that the ALJ found warranted with regard to Plaintiff's later-developed impairment. It was appropriate for the ALJ to consider the opinions of Dr. Debroy along with the rest of the medical and other evidence in determining the RFC. *See Casey v. Astrue*, 503 F.3d 687, 694 ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole.").

Plaintiff does not appear to challenge the ALJ's assessment of the opinion evidence related to Plaintiff's mental impairments. To the extent that she does challenge that assessment, the Court finds the ALJ's assessment supported by substantial evidence for the reasons stated in the Commissioner's brief.

The Court acknowledges that the record contains a great deal of conflicting evidence, some of which would have supported a decision by the ALJ to give more weight to Dr. Urban's opinion than she did. However, the ALJ's decision makes clear that she considered all of the relevant evidence in weighing both opinions and articulated that consideration as required by the relevant regulations. It is not the role of this Court to reweigh the evidence. The ALJ's assessment of the opinion evidence is supported by substantial evidence, and the Court cannot say that this decision was outside the available "zone of choice." *See Hacker v. Barnhart*, 459 F.3d 93, 937-38 (8th Cir. 2006).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**. A separate judgment will accompany this Memorandum Opinion.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of March, 2022.